# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAWRENCE CHRISTOPHER SMITH, | Case No. 1:21-cv-01554-JLT-EPG-HC |
| Petitioner, | FINDINGS AND RECOMMENDATION RECOMMENDING DENIAL OF PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| KEN CLARK, | |
| Respondent. | |

Petitioner Lawrence Christopher is a state prisoner proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons discussed herein, the undersigned recommends denial of the petition for writ of habeas corpus.

**I.**

**BACKGROUND**

On May 24, 2021, Petitioner was convicted in the Kings County Superior Court of possession of a dangerous weapon by an inmate and battery on a non-confined person by a prisoner. On June 29, 2021, Petitioner was sentenced to an imprisonment term of twenty-five years to life. (ECF No. 19-26.) On July 30, 2021, Petitioner a filed a state habeas petition in the California Supreme Court, which summarily denied the petition. (ECF Nos. 19-27, 19-28.)

On October 21, 2021, Petitioner filed the instant petition for writ of habeas corpus, raising the following claims for relief: (1) denial of favorable evidence, in violation of due

process; and (2) judicial bias. (ECF No. 1 at 4.)[1] Respondent filed an answer. (ECF No. 23.) To date, no traverse has been filed, and the time for doing so has passed.

## II.

## STATEMENT OF FACTS

On November 10, 2018, Petitioner was an inmate at Corcoran State Prison[2] and was escorted to the shower by two officers. After Petitioner was done with his shower, the door was forcefully opened and Petitioner struck one of the escorting officer in the chest by violently turning his torso, causing the officer to move backwards and lose hand control of Petitioner. (ECF No. 19-22 at 9–14, 42–44.) The escorting officers placed Petitioner on the ground, additional responding officers arrived to assist, a responding officer placed leg restraints on Petitioner, and then the two responding officers indicated to Petitioner that they were going to escort him to the rotunda to get a medical evaluation. (Id. at 16, 23–25.) In anticipation of escorting Petitioner to the new location, one of the responding officers conducted a search of Petitioner while he was on the ground in the shower area. The officer found 5.5-inch-long inmate manufactured knife[3] in the waistband of Petitioner's boxers. (Id. at 64–65, 90.)

## III.

## STANDARD OF REVIEW

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution. The challenged convictions arise out of the Kings County Superior Court, which is located within the Eastern District of California. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(d).

///

---

[1] Page numbers refer to the ECF page numbers stamped at the top of the page.

[2] At that time, Petitioner had been placed on heightened security precautions because of previous assaultive conduct towards staff. (ECF No. 19-22 at 82–84.)

[3] The handle was made out of cardboard, and the weapon itself was made of metal that was sharpened to a point. (ECF 19-22 at 65.)

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997) (en banc). The instant petition was filed after the enactment of AEDPA and is therefore governed by its provisions.

Under AEDPA, relitigation of any claim adjudicated on the merits in state court is barred unless a petitioner can show that the state court's adjudication of his claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); Davis v. Ayala, 576 U.S. 257, 268–69 (2015); Harrington v. Richter, 562 U.S. 86, 97–98 (2011); Williams, 529 U.S. at 413. Thus, if a petitioner's claim has been "adjudicated on the merits" in state court, "AEDPA's highly deferential standards" apply. Ayala, 576 U.S. at 269. However, if the state court did not reach the merits of the claim, the claim is reviewed *de novo*. Cone v. Bell, 556 U.S. 449, 472 (2009).

In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Williams, 529 U.S. at 412. In addition, the Supreme Court decision must "'squarely address[] the issue in th[e] case' or establish a legal principle that 'clearly extend[s]' to a new context to the extent required by the Supreme Court in . . . recent decisions"; otherwise, there is no clearly established Federal law for purposes of review under AEDPA and the Court must defer to the state court's decision. Moses v. Payne, 555 F.3d 742, 754 (9th Cir. 2008) (alterations in original) (quoting Wright v. Van Patten, 552 U.S. 120, 125, 123 (2008)).

If the Court determines there is clearly established Federal law governing the issue, the Court then must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, [the] clearly established Federal law." 28 U.S.C. § 2254(d)(1). A

3

state court decision is "contrary to" clearly established Supreme Court precedent if it "arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413. A state court decision involves "an unreasonable application of[] clearly established Federal law" if "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents." Richter, 562 U.S. at 102. That is, a petitioner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 103.

If the Court determines that the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law," and the error is not structural, habeas relief is nonetheless unavailable unless it is established that the error "had substantial and injurious effect or influence" on the verdict. Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (internal quotation mark omitted) (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)).

AEDPA requires considerable deference to the state courts. Generally, federal courts "look through" unexplained decisions and review "the last related state-court decision that does provide a relevant rationale," employing a rebuttable presumption "that the unexplained decision adopted the same reasoning." Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018). This presumption may be rebutted "by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed." Id.

"When a federal claim has been presented to a state court[,] the state court has denied relief," and there is no reasoned lower-court opinion to look through to, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Richter, 562 U.S. at 99. Where the state court reaches a decision on the merits and there is no reasoned lower-court opinion, a federal court

independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). Walker v. Martel, 709 F.3d 925, 939 (9th Cir. 2013). "Independent review of the record is not *de novo* review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). The federal court must review the state court record and "must determine what arguments or theories . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." Richter, 562 U.S. at 102.

## IV.

## DISCUSSION

### A. Discovery

In his first claim for relief, Petitioner asserts that he was denied favorable evidence, in violation of due process. (ECF No. 1 at 4.) Specifically, Petitioner alleges that pursuant to California Penal Code section 1054.1, he filed pretrial discovery requests for, *inter alia*, copies of crime reports authored against Petitioner by correctional officers. However, despite being ordered by the superior court to provide the requested discovery, the prosecution did not comply with the court order. (Id. at 5–6.) Respondent argues that rejecting a collateral attack on pretrial discovery was reasonable. (ECF No. 23 at 4.)

This claim was raised in Petitioner's state habeas petition, which the California Supreme Court summarily denied. The Court presumes that the state court adjudicated the claim on the merits. See Richter, 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."). Accordingly, AEDPA's deferential standard of review applies, and as there is no reasoned state court decision on this claim, the Court "must determine what arguments or theories . . . could have supported, the state court's decision; and then it must ask whether it is

///

possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." Richter, 562 U.S. at 102.

1. Background

The petition alleges that on May 19, 2019, Petitioner orally requested pretrial discovery from the prosecution. (ECF No. 1 at 5.) On June 20, 2019, Petitioner mailed a written discovery demand for, *inter alia*, copies of seventeen crime reports authored against Petitioner by correctional officers at several penal institutions, including Corcoran, involving allegations of assault conduct and/or possession of inmate manufactured weapons. (Id.) On July 9, 2019, the trial court granted Petitioner's request for an order requiring the prosecution to comply with Petitioner's discovery demands so that Petitioner could be prepared for the preliminary hearing. (Id.) On August 20, 2019, the preliminary hearing was held, and Petitioner still had not been provided with the requested discovery. (Id. at 6.) Petitioner alleges that during the pendency of the criminal proceedings, which lasted over two years, he was never provided with the requested documents. (Id.)

On November 6, 2019, Petitioner, who represented himself, argued a motion to dismiss the charges based on arbitrary or discriminatory prosecution. (ECF No. 19-7 at 3, 8.) In denying the motion, the trial court stated:

> The Court notes the defendant did not seek discovery proceedings related to this *Murgia* motion prior to filing it. Typically the defense initiates the discovery process for records and reports to establish discriminatory patterns.
>
> The defendant has failed to show by a preponderance of the evidence that he was singled out for prosecution based on his membership in a cognizable group, race, gender, etcetera.
>
> He alleges the prosecution is occurring in retaliation for his lawsuits in federal court. The defendant fails to present any evidence that his status as a federal plaintiff establishes him as a member of a cognizable group, let alone the prosecution would not have concurred but for this.
>
> While the defendant has set out numerous evidentiary conflicts he observed in this case, none of these conflicts are direct proof of a CDCR plan to discriminate against him or serve as data that these offenses he is charged with are only prosecuted by the Kings County DA against a certain group.

> The fact that the Kings County District Attorney's Office and CDCR have initiated complaints against him in the past is not evidence of his membership in a group or a plan/statistical pattern of discrimination against the group.
>
> For the reasons set forth above, the defendant has failed to meet his burden of dismissal pursuant to *Murgia versus Municipal Court* 15 Cal.3d, 286.
>
> The motion is denied. The defendant may seek the above aforementioned remedies if he disagrees with this ruling.

(ECF No. 19-7 at 9–10.) Petitioner complained that he previously requested discovery to support his motion, but that the prosecution did not provide said discovery. (Id. at 11–12.) The prosecutor stated that she previously provided all discovery in her possession, which consisted primarily of police reports. (Id. at 12.) The trial court asked the prosecution "to again review their records and the previous orders of the Court to make sure that all previously-ordered discovery and requested discovery by the defendant has been provided to him" and to do so by the pretrial conference on January 6. (Id. at 13.)

On January 6, 2020, Petitioner indicated that he received discovery including a D.A. investigator's report and photographs of a shower stall. (ECF 19-8 at 3–4.) On February 10, 2020, Petitioner complained at a trial readiness conference that the prosecution had not yet produced discovery (past incident and crime reports) that he had requested. Petitioner claimed he needed the discovery so that he could decide whether to bifurcate his trial and prepare his witness list. (ECF No. 19-9 at 8–16.) Petitioner nevertheless informed the trial court that he was ready to proceed to trial. (Id. at 16.)

On March 6, 2020, Petitioner complained at the trial confirmation that he had yet to receive court-ordered discovery. (ECF 19-10 at 3.) The prosecutor informed the court that she was not aware of any court-ordered discovery that she had not already disclosed and that she had turned over to Petitioner "everything that I have." (Id. at 5–6, 10.) Petitioner clarified that he was requesting over twelve incident reports authored by CDCR on the dates of April 24, 2010 and March 13, 2013. (Id. at 16–17.) The court continued the trial and ordered Petitioner to file a discovery motion specifically listing in detail the reports he sought. (Id. at 20–22.)

///

1        On December 21, 2020, Petitioner again complained that he had not received past
2 incident reports for the past ten years at CDCR. (ECF No. 19-14 at 9.) The trial court noted that
3 such a request was overly broad and irrelevant. (Id.) Petitioner agreed to rewrite and resubmit his
4 discovery request. (Id. at 11.)

5        On May 19, 2021, Petitioner's motion to dismiss pursuant to California Penal Code
6 section 995 was heard in Department 10 by Judge Reinhart. (ECF No. 19-20 at 1–2.) Petitioner
7 again noted that he never received the past incident reports he requested to support his contention
8 that the criminal charges were discriminatory and retaliatory. (Id. at 9.) Judge Reinhart denied
9 the 995 motion and stated:

> As to any discovery motion that you believe is out there, or any motion for discriminatory prosecution, you haven't presented sufficient evidence to me at this hearing to establish either of those. Factually you failed to establish them and so we will deny those requests without prejudice. But if those motions -- if you have those motions and they have not already been heard, they are to be heard before Judge Edwards, who is the judge who is assigned to this case.

15 (ECF No. 19-20 at 13.) On May 24, 2021, Petitioner stated that he was ready to proceed to trial
16 without any mention of his discovery issues, and the trial commenced. (ECF No. 19-22.)

17        2.  Analysis

18        To the extent Petitioner asserts a violation of California Penal Code section 1054.1, the
19 Court finds a claim alleging a violation of state law is not cognizable in federal habeas corpus.
20 See Swarthout v. Cooke, 562 U.S. 216, 219 (2011) (per curiam) ("We have stated many times
21 that federal habeas corpus relief does not lie for errors of state law."); Wilson v. Corcoran, 562
22 U.S. 1, 5 (2010) (per curiam) ("[I]t is only noncompliance with *federal* law that renders a State's
23 criminal judgment susceptible to collateral attack in the federal courts."); Langford v. Day, 110
24 F.3d 1380, 1389 (9th Cir. 1996) ("We accept a state court's interpretation of state law, and
25 alleged errors in the application of state law are not cognizable in federal habeas corpus."
26 (citations omitted)).

27        "A state court's discovery ruling therefore is not subject to federal habeas review unless
28 the ruling violates federal law, either by infringing upon a specific federal constitutional or

statutory provision or by depriving the defendant of the fundamentally fair trial guaranteed by due process." Pinola v. Cambra, No. C 01-1781 SI, 2002 WL 1457764, at *4 (N.D. Cal. July 1, 2002) (citing Chambers v. Mississippi, 410 U.S. 284, 294 (1973)). To the extent Petitioner asserts a federal due process claim, "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Brady v. Maryland, 373 U.S. 82, 87 (1963). However, "[t]here is no general constitutional right to discovery in a criminal case, and *Brady* did not create one; as the Court wrote recently, 'the Due Process Clause has little to say regarding the amount of discovery which the parties must be afforded . . . .'" Weatherford v. Bursey, 429 U.S. 545, 559 (1977) (quoting Wardius v. Oregon, 412 U.S. 470, 474 (1973)).

Even in the absence of a specific request, the prosecution has a constitutional duty to turn over exculpatory evidence that would raise a reasonable doubt about the defendant's guilt. United States v. Agurs, 427 U.S. 97, 112 (1976). The duty to disclose under Brady also extends to evidence that the defense might use to impeach prosecution witnesses. United States v. Bagley, 473 U.S. 667, 676 (1985). "[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Id. at 682. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. To establish that a Brady violation undermines a conviction, Petitioner must show: "(1) the evidence at issue is 'favorable to the accused, either because it is exculpatory, or because it is impeaching'; (2) the State suppressed the evidence, 'either willfully or inadvertently'; and (3) 'prejudice . . . ensued.'" Skinner v. Switzer, 562 U.S. 521, 536 (2011) (quoting Strickler v. Greene, 527 U.S. 263, 281–82 (1999)).

Here, Petitioner does not demonstrate that past incident reports contained evidence favorable to Petitioner. Mere speculation that the past incident reports *may* have contained information that *might* have impeachment value is not sufficient. See Agurs, 427 U.S. at 109–10 ("The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional

1  sense."); Runningeagle v. Ryan, 686 F.3d 758, 769 (9th Cir. 2012) (explaining that "to state a
2  Brady claim, [a petitioner] is required to do more than 'merely speculate' about" the withheld
3  evidence); Harrison v. Lockyer, 316 F.3d 1063, 1065–66 (9th Cir. 2003) (finding on federal
4  habeas review that California Supreme Court's upholding of procedure for discovery requests of
5  citizen complaints against officers, including requirement for preliminary showing of materiality
6  despite no indication "on how a defendant in a criminal case will know, or be able to make, a
7  preliminary showing that a police personnel file contains evidence material to his defense . . .
8  faithfully followed the United States Supreme Court"). The requested discovery concerned other
9  investigations and reports against Petitioner, and such investigations do not concern the
10 underlying incident or relate to the evidence used to convict him. As the trial court pointed out,
11 such evidence would only be conceivably relevant if Petitioner could establish that he was
12 singled out for prosecution based on his membership in a protected group, (ECF No. 19-7 at 9),
13 but Petitioner has no indication this is so. Petitioner can point to no evidence in his prosecution
14 of this incident that he was prosecuted based on protected characteristics. Nor does he show
15 anything other than speculation that documents about previous investigations could show such a
16 pattern. As the trial court correctly stated, "the fact that the Kings County District Attorney's
17 Office and CDCR have initiated complaints against him in the past is not evidence of his
18 membership in a group or a plan/statistical pattern of discrimination against the group." (ECF
19 No. 19-7 at 10.)

20      Based on the foregoing, the Court finds that the state court's rejection of Petitioner's due
21 process claim was not contrary to, or an unreasonable application of, clearly established federal
22 law. The state court's decision was not "so lacking in justification that there was an error well
23 understood and comprehended in existing law beyond any possibility for fairminded
24 disagreement." Richter, 562 U.S. at 103. Accordingly, Petitioner is not entitled to habeas relief
25 on his first claim, and it should be denied.

26     **B.  Judicial Bias**

27      In his second claim for relief, Petitioner asserts that his trial judge was biased and should
28 have been disqualified, alleging that the trial judge retaliated against Petitioner by: (1)

1 purposefully assigning as standby counsel an attorney whom Petitioner had previously moved to have removed in a related Kings County Superior Court action due to counsel colluding with the prosecution; (2) refusing to issue discovery sanctions against the prosecution; (3) refusing to hear a California Penal Code section 995 motion; (4) refusing to hear a Pitchess motion; and (5) coercing Petitioner to accept a bench trial. (ECF No. 1 at 4, 7.) In the answer, Respondent "assumes Petitioner attempted to properly renew his exhausted judicial bias claim" raised in his state habeas petition filed in the California Supreme Court and argues that rejecting a collateral attack on judicial bias was reasonable. (ECF No. 23 at 8 n.4, 7.) Respondent contends that if Petitioner is "not renewing that properly exhausted claim, then the current judicial bias claim would be unexhausted." (ECF No. 23 at 8 n.4.)

In his state habeas petition filed in the California Supreme Court, Petitioner asserted judicial bias on the following grounds: (1) repeatedly refusing to issue sanctions against the prosecution for failing to abide by the court's July 9, 2019 discovery order; (2) refusing to hear a California Penal Code section 995 motion; and (3) refusing to hear a Pitchess motion. (ECF No. 19-27 at 5.) The California Supreme Court summarily denied Petitioner's state habeas petition, and this Court presumes that the California Supreme Court adjudicated the judicial bias claim on the merits. Richter, 562 U.S. at 99. As there is no reasoned state court decision on this claim, the Court "must determine what arguments or theories . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." Id. at 102.

To the extent Petitioner asserts a judicial bias claim based on the trial judge's assignment of standby counsel and coercion of Petitioner to accept a bench trial, Petitioner has not raised these grounds to the state courts, which raises a potential exhaustion bar.[4] However, pursuant to

---

[4] A petitioner in state custody who is proceeding with a petition for writ of habeas corpus must exhaust state judicial remedies. 28 U.S.C. § 2254(b)(1). A petitioner can satisfy the exhaustion requirement by providing the highest state court with a full and fair opportunity to consider each claim before presenting it to the federal court. O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999); Duncan v. Henry, 513 U.S. 364, 365 (1995); Picard v. Connor, 404 U.S. 270, 276 (1971). To provide the highest state court the necessary opportunity, the petitioner must "fairly present" the claim with "reference to a specific federal constitutional guarantee, as well as a statement of the facts that entitle the petitioner to relief." Duncan, 513 U.S. at 365; Gray v. Netherland, 518 U.S. 152, 162-63 (1996). "Fair presentation

11

28 U.S.C. § 2254(b)(2), the Court may deny an unexhausted claim on the merits "when it is perfectly clear that the [petitioner] does not raise even a colorable federal claim." Cassett v. Stewart, 406 F.3d 614, 624 (9th Cir. 2005) (adopting the standard set forth in Granberry v. Greer, 481 U.S. 129, 135 (1987)).

1. Background

a. **Motion to Disqualify**

On August 11, 2020, Petitioner filed a motion to disqualify Judge Edwards. (ECF No. 20-1.) Therein, Petitioner asserted that Judge Edwards denied Petitioner access to the courts, denied Petitioner the right to be free from unreasonable searches and seizures, denied Petitioner effective assistance of counsel, was deliberately indifferent, and denied Petitioner equal protection and due process of law, especially with respect to the judge's failure to ensure Petitioner received the discovery he thought was owed him. (Id. at 5–10.) On December 21, 2020, Judge Barnes held a hearing and denied the motion to disqualify. (ECF No. 19-15.)

b. **Discovery**

As set forth in section IV(A)(1), *supra*, Petitioner raised the issue of his discovery requests for prior CDCR incident reports multiple times throughout his state criminal proceeding. On March 6, 2020, Judge Edwards ordered Petitioner to file a discovery motion specifically listing in detail the reports he sought. (ECF No. 19-10 at 20–22.) On December 21, 2020, when Petitioner again complained that he had not received past incident reports for the past ten years at CDCR, Judge Edwards stated that such a request was overly broad and irrelevant. (ECF No. 19-14 at 9.) On May 19, 2021, Judge Reinhart denied Petitioner's request for discovery without prejudice. (ECF No. 19-20 at 13.) On May 24, 2021, Petitioner stated that he was ready to proceed to trial without any mention of his discovery issues, and the trial commenced. (ECF No. 19-22.)

///

---

requires that the petitioner 'describe in the state proceedings both the operative facts and the federal legal theory on which his claim is based so that the state courts have a "fair opportunity" to apply controlling legal principles to the facts bearing upon his constitutional claim.'" Davis v. Silva, 511 F.3d 1005, 1009 (9th Cir. 2008) (citation omitted).

### c. California Penal Code Section 995 Motions

As set forth in section IV(A)(1), *supra*, on November 6, 2019, Petitioner argued a motion to dismiss the charges based on arbitrary or discriminatory prosecution. (ECF No. 19-7 at 3, 8.) Judge Edwards denied the motion, finding that Petitioner "failed to show by a preponderance of the evidence that he was singled out for prosecution based on his membership in a cognizable group, race, gender, etcetera," Petitioner "fail[ed] to present any evidence that his status as a federal plaintiff establishes him as a member of a cognizable group, let alone the prosecution would not have concurred but for this," and the "fact that the Kings County District Attorney's Office and CDCR have initiated complaints against him in the past is not evidence of his membership in a group or a plan/statistical pattern of discrimination against the group." (ECF No. 19-7 at 9–10.)

On September 23, 2020, Judge Edwards noted that Petitioner "has a Pitchess Motion, a motion to disqualify me; he has a motion for ancillary defense services and a motion to dismiss, although it's all discombobulated." (ECF No. 19-12 at 3.) The court rescheduled the motions, including the motion to dismiss, to be heard on November 10. (Id. at 10.) At the November 10, 2020 hearing, Petitioner was unavailable because he was in quarantine. (ECF No. 19-13 at 3.) The court rescheduled the motions to be heard on December 21 with the motion to disqualify set in Department 10 and the remaining motions to be heard by Judge Edwards. (Id. at 4–5.)

On December 21, 2020, Judge Barnes held a hearing on the motion to disqualify Judge Edwards and denied the motion. (ECF No. 19-15.) Later that same day, Petitioner's other motions were heard by Judge Edwards. (ECF No. 19-14.) At the start of the hearing before Judge Edwards, the following exchange occurred:

> THE COURT: All right, Lawrence Smith.
> Good morning, Mr. Smith. Please come in and have a seat. All right, Mr. Smith is present in court. He's representing himself. Mr. Gomez-Vidal is stand-by counsel. Mr. Skinner represents the People. He's present by videoconference, and Mr. Smith had a number of cases on calendar, well, it's on one case number of issues on calendar, 19CMS1737, and has this been heard in Department 10 yet this morning?
>
> MR. GOMEZ-VIDAL: Yes, your Honor, it was denied.

13

|   |   |
|---|---|
| 1 | THE COURT: All right, so the *motion for dismissal* was denied. That leaves us with some other issues that I'll take up here. |
| 2 |   |

(ECF No. 19-14 at 3 (emphasis added).) However, the motion heard on December 21, 2020, in Department 10 was the motion to disqualify rather than the motion to dismiss. It appears Judge Edwards mistakenly believed that "[t]he motion for dismissal ha[d] already been denied" in Department 10 and thus, did not rule on the motion to dismiss on December 21, 2020. (ECF No. 19-14 at 8.)

On April 8, 2021, the matter of Petitioner's motion to dismiss, which was filed in March 2021, came before Judge LaPorte. (ECF No. 19-18.) The court continued the matter "because Judge Reinhart heard the matter before and he should be the one to hear this motion to dismiss." (Id. at 4.) On April 21, 2021, Judge Edwards held a trial readiness conference. (ECF No. 19-19.) The prosecutor indicated that "there was a 995 filed and responded to in 2020." (Id. at 3.) The court responded:

> Madam Clerk tells me that the minute order of June 9th was the last date there was a motion to dismiss for the 995. It's not showing that there's any ruling by the Court on that. So at this point all I have is what's in front of me here about the 995. I don't recall one being filed or ruled on.

(ECF No. 19-19 at 5.) The clerk clarified that "[i]t was continued. It wasn't heard." (Id.) The court indicated that "[a]t this point it's on calendar for the motion for the 995 in Department 10." (Id. at 6.)

On May 19, 2021, Judge Reinhart held a hearing on Petitioner's 995 motion. (ECF No. 19-20 at 1–3.) At the outset of the hearing, the following exchange occurred:

> MR. SKINNER: Your Honor, the People had a response filed May 26th, 2020, for this very motion when it was first brought up, so that's also in the Court file if you need it.
>
> THE DEFENDANT: Actually, this motion was not made first on May 26th of 2020. That was the initial 995 motion, that was never heard by the Court.
>
> MR. SKINNER: Anyway, the response is the same.
> THE COURT: Yeah, I looked that over too. I was a little unclear as to the disposition or the outcome of that because I didn't see any ruling. *In any event, I've reviewed those materials.*

(ECF No. 19-20 at 3–4 (emphasis added).) Later in the proceeding, Petitioner persisted in reminding the court that his initial 995 motion was never addressed:

> THE COURT: We're addressing it today. Today is the 995 motion, it's not a discovery motion.
>
> THE DEFENDANT: Yes, but the 995 –
>
> THE COURT: As to the 995 –
>
> THE DEFENDANT: The original --
>
> THE COURT: -- do you have any additional argument or evidence?
>
> THE DEFENDANT: No, I just want to say the original 995 motion was to strike Count 1 and 3, that was never heard.
>
> THE COURT: Right, we're having it today.
>
> THE DEFENDANT: Well, we can't be having it today because the 995 motion that I was just speaking about was to strike Counts 1 and 3. This is about the abnormality in receiving discovery in a preliminary hearing. So this is a completely different 995 motion. So there could be no way that you're addressing this now on an original motion that I was just speaking of, because I just happened to file this motion, this 995 motion, after receiving adequate law library access to file this motion.
>
> MR. SKINNER: Your Honor, based on that statement --
>
> THE COURT: Then you have me completely --
>
> THE DEFENDANT: The original 995 motion that was filed on --
>
> THE COURT: No, I looked at that also.
>
> THE DEFENDANT: Yes, that was only to strike Counts 1 and 3. That motion was never heard. Not once before the Court. I just refiled this 995 motion to dismiss the People's Complaint based on an abnormality in the preliminary hearing, to wit, I never received any of the crime reports or the discovery that I moved for that Judge Edwards ordered the People to provide me with on July 9th, 2019.
>
> MR. SKINNER: Your Honor, according to what he's saying on his own he is not stating grounds for a 995.
>
> THE COURT: Well, procedurally you labeled it as a 995.
>
> THE DEFENDANT: Yes.
>
> THE COURT: A 995 is a motion that requires someone other than the magistrate who heard the preliminary hearing to review

>whether the bind over was proper, that's what I did. Now, to the extent that I consider this as a 995 motion, the Court's going to find that the evidence produced at the preliminary hearing was sufficient for the holding order, and as to what I have reviewed the defendant was legally committed in that preliminary hearing.

(ECF No. 19-20 at 11–13.)

### d. Pitchess Motion

On September 23, 2020, the trial court held a hearing on Petitioner's motion pursuant to Pitchess v. Superior Court, 11 Cal. 3d 531 (1974). (ECF 19-12.) The trial court denied the motion, but without prejudice so that Petitioner could refile the motion and properly serve the prosecution, and the matter was continued. (Id. at 7–10.) On December 21, 2020, the trial court held a hearing on the Pitchess motion. (ECF No. 19-14.) In denying the motion, the trial court stated:

>The Pitchess Motion that you presently have is denied. I'll deny it and I'll let you file another one if you wish if you properly serve the AG's office and have it properly focused regarding the affidavit establishing good cause, and it also has to relate to the specific officers that are involved in your case. So if you want to resubmit that motion and have it properly served and its's in proper format and addresses the proper issues the Court will reconsider it, okay?

(ECF No. 19-14 at 6.) On March 3, 2021, the trial court held another Pitchess hearing and stated:

>First of all, your Pitchess Motion, again, was rejected by the clerk's office because the proof of service was not adequately dated. That's one issue.
>
>And then the second one is the A.G.'s office is saying that you served the wrong -- they're not the custodian of the records. You have the A.G.'s office records, CDCR, but they're not the custodian of the records, and so the Evidence Code requires that you serve the custodian of the records with the Pitchess Motion.
>
>. . .
>
>So you've got to do that. If you do that then we can address the substance of this Pitchess Motion. So you've got to get it properly before the court to do that, all right, and get them -- and serve the correct people.
>
>. . .
>
>If did you do that then we can have a discussion of what the actual records are that you're looking for.

16

> . . .
>
> [S]o right now I can't address the Pitchess Motion because it's not been properly served on the right folks.

(ECF No. 19-16 at 13–15.) It does not appear that Petitioner ever corrected that deficiency.

### e. Standby Counsel

The petition alleges that Judge Edwards retaliated against Petitioner by "purposefully assigning as standby counsel" Mr. Trevino, "whom several months prior [Petitioner] had moved to have removed from service in a related action also before the Kings County Superior Court due to Mr. Trevino colluding with the People to deny [Petitioner] substantive rights afforded to [him] under the Due Process Clause (discovery)." (ECF No. 1 at 4.) Petitioner appears to allege that Judge Edwards's action was in retaliation against Petitioner initiating 42 U.S.C. § 1983 lawsuits against various Kings County law enforcement personnel in federal court. (Id. at 7.)

### f. Alleged Coercion to Accept Bench Trial

On March 3, 2021, the trial court held a trial setting conference. (ECF No. 19-16.) The trial court informed Petitioner, "You can either have a jury trial or a court trial, and if we set a court trial you can probably have it heard much sooner than you can a jury trial" because the trial court was "still under the emergency orders for COVID-19" and could "only do one trial a week to comply with COVID protocols." (ECF No. 19-16 at 3, 4.) Petitioner informed the court that he preferred a jury trial and was "willing to do a [time] waiver as well . . . 90 days max." (Id. at 4.) The court then informed Petitioner that "[t]here are trials scheduled every day in the month of June" and "[a] good chunk of July is also already scheduled for jury trials at the moment." (Id.) Petitioner then asked whether he could have a trial within sixty days if he chose a bench trial. (Id. at 5.) The trial court affirmed that they could schedule a bench trial to start on May 24. Petitioner agreed and waived his right to a jury trial. (Id. at 5–6.)

2. Analysis

The Supreme Court has long recognized that due process "clearly requires a 'fair trial in a fair tribunal' before a judge with no actual bias against the defendant or interest in the outcome of his particular case." Bracy v. Gramley, 520 U.S. 899, 904–05 (1997) (quoting Withrow v.

17

1  Larkin, 421 U.S. 35, 46 (1975)). "The Constitution requires recusal where 'the probability of
2  actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable.'"
3  Hurles v. Ryan, 752 F.3d 768, 788 (9th Cir. 2014) (quoting Withrow, 421 U.S. at 47). Thus, to
4  establish a due process violation Petitioner need not prove actual bias, just an intolerable risk of
5  bias. Hurles, 752 F.3d at 789. However, Petitioner must "overcome a presumption of honesty
6  and integrity in those serving as adjudicators." Withrow, 421 U.S. at 47. "[D]ue process requires
7  recusal where the judge has a direct, personal and substantial pecuniary interest in convicting a
8  defendant." Hurles, 752 F.3d at 789. "A judge must withdraw where she acts as part of the
9  accusatory process, 'becomes embroiled in a running, bitter controversy' with one of the
10 litigants, or becomes 'so enmeshed in matters involving [a litigant] as to make it appropriate for
11 another judge to sit.'" Id. at 789–90 (citations omitted).

12      The Supreme Court has held that in the absence of some extrajudicial source of bias or
13 partiality, "judicial rulings alone almost never constitute a valid basis for a bias or partiality
14 motion" and "judicial remarks during the course of trial that are critical or disapproving of, or
15 even hostile to, counsel, the parties, or their cases ordinarily do not support a bias or partiality
16 challenge . . . [unless] they display a deep-seated favoritism or antagonism that would make fair
17 judgment impossible." Liteky v. United States, 510 U.S. 540, 555 (1994). See Larson v.
18 Palmateer, 515 F.3d 1057, 1067 (9th Cir. 2008) (applying Liteky in § 2254 habeas proceeding
19 governed by the AEDPA); United States v. Sypolt, 346 F.3d 838, 840 (8th Cir. 2003) (If a
20 petitioner's "claim fails to pass muster under § 455 [federal recusal statute] . . . it cannot survive
21 the more rigorous standards required of a claim under the due process clause.").

22      Here, the exhausted grounds Petitioner states as the basis for his judicial bias claim are
23 judicial rulings, and thus, do not constitute a valid basis for a claim of judicial bias. Judge
24 Edwards's handling of Petitioner's discovery requests and Pitchess motions and what appears to
25 be a mistaken failure to address one of Petitioner's 995 motions to dismiss do not "display a
26 deep-seated favoritism or antagonism that would make fair judgment impossible." Liteky, 510
27 U.S. at 555. Therefore, the Court finds that the state court's rejection of Petitioner's judicial
28 claim was not contrary to, or an unreasonable application of, clearly established federal law. The

state court's decision was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 562 U.S. at 103.

With respect to the unexhausted grounds Petitioner states as the basis for his judicial bias claim, the Court finds that it may deny the claim on the merits because "it is perfectly clear that the [petitioner] does not raise even a colorable federal claim." Cassett, 406 F.3d at 624. With respect to Judge Edwards's allegedly retaliatory assignment of standby counsel, the record before this Court does not establish that Judge Edwards's actions were in any way related to Petitioner's § 1983 litigation. Further, Petitioner's allegations that standby counsel Trevino colluded with the prosecution to deny Petitioner discovery in a separate Kings County Superior Court action are vague and uncorroborated and do not demonstrate an intolerable risk of bias on the part of Judge Edwards.

With respect to the alleged coercion to proceed with a bench trial, the transcript of the March 3, 2021 trial setting conference establishes that Judge Edwards stated the options Petitioner had regarding whether to proceed with a bench trial or a jury trial. Due to the COVID-19 protocols in place at the time, it was unlikely that the court would be able to schedule a jury trial within the timeframe requested by Petitioner. After confirmation that a bench trial could be held within sixty days, Petitioner agreed to a bench trial and waived his right to a jury trial. Upon review of the transcript, it does not appear to this Court that Petitioner's agreement to a bench trial was coerced or unwilling in any way or that Judge Edwards acted in a manner that demonstrated an intolerable risk of bias.

Based on the foregoing, Petitioner is not entitled to habeas relief on his second claim, and it should be denied.

## V.

## RECOMMENDATION

Accordingly, the undersigned HEREBY RECOMMENDS that the petition for writ of habeas corpus be DENIED.

///

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within **THIRTY (30) days** after service of the Findings and Recommendation, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The assigned United States District Court Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **November 27, 2023**              /s/ Erica P. Grosjean
                                            UNITED STATES MAGISTRATE JUDGE